THOMAS J. DEVORE, Plaintiff and Respondent, *v.* THOMAS S. WOODRUFF, Defendant and Appellant.

**1.  Deed — Agreement to Reconvey — Effect of Dependent on Intention.**

A separate agreement was executed between grantor and grantee in a deed, by which latter agreed to reconvey to former on payment of a specified sum. *Held*, that such separate agreement did not show conclusively that such deed was executed to secure a debt, but that the question whether the transaction was a sale with an optional right of purchase, or a mortgage, was one of fact resting upon the intention of the parties, to be determined from all the evidence in the case.

**2.  Partners; Action at Law Between.**

An action at law will not lie in favor of one partner, against his copartner, to recover the profits made by the latter on sale of property formerly belonging to the firm, but procured to be transferred by defendant from the firm to himself, through a third person, and afterwards by him sold at an advance; no settlement of the partnership accounts and transactions having been had.

(Opinion Filed May 6, 1890.)

*A*PPEAL from district court, Cass county; Hon. WILLIAM B. McCONNELL, Judge.

Messrs. Greene & Hildreth, for appellant, argued:  That as to all transactions involved in this action the parties were partners; that the plaintiff had never demanded an accounting or dissolution, therefore this action at law for damages cannot be maintained; citing, Haskell v. Adams, 7 Pick. 59; Williams v. Henshaw, 12 id. 378; Carey v. Bruth, 2 Caines, 293; Bates on Partnership, vol. 2, § 849; Nugent v. Locke, 4 Cal. 320.

That as to the land near Fargo, there was no proof of indebtedness from defendant to plaintiff; if there was such indebtedness, it was extinguished by the deed from defendant to plaintiff; citing, Hayes v. Carr, 83 Ind. 275; Conroy's Executors v. Alexander, 7 Cranch, 218; Flagg v. Mann, 14 Pick. 467; Jones

on Mtgs., §§ 259, 261; Smith v. Crosby, 47 Wis. 160. The transfer, with privilege of repurchase, was a sale on condition. Sacton v. Hitchcock, 47 Barb. 220; Sentland v. Sentland, 3 Mich. 482; Coe v. Cassidy, 6 Daly, 645; Turner v. Kerr, 44 Wis. 433; Lee v. Kilburn, 3 Gray, 594; Baker v. Thresher, 4 Denio, 493; Hilliard on Mtgs., vol. 1, p. 96; Kent, vol. 4, p. 147; Holmes v. Grant, 8 Paige, 243; Woodward v. Pickett, 8 Gray, 617; Henly v. Houghtaling, 41 Cal. 22; McNamara v. Culver, 22 Kan. 661; Garsert v. Boyk, 1 Mont. 240; Horback v. Hill, 112 U. S. 144.

Messrs. Ball & Smith, for the respondent, argued: That the partnership had been dissolved by mutual consent, and by a completion of the business for which it was formed. Rohrer v. Drake, 33 Minn. 408. The partnership affairs have all been settled. One partner can sue another, even on an obligation pertaining to the partnership business, if the obligation can be determined without going into the partnership accounts. Croter v. Benninger, 45 N. Y. 545; Clark v. Mills, 13 Pac. Rep. 569. In this case an adjustment of the partnership affairs may be effected in an action at law. Thompson v. Lowe, 12 N. E. Rep. 486. Where fraud exists action may be maintained against a copartner before final settlement. Sprout v. Crowley, 30 Wis. 187. Where one partner lends another the means to pay latter's share of capital, it has been held not a partnership transaction. Bull v. Coe, 18 Pac. Rep. 808; Wetherbee v. Potter, 99 Mass. 354; Dunphy v. Ryan, 116 U. S. 491.

Under code system of pleading, the court can give relief, irrespective of the prayer of the complaint, and if appellant had asked for an accounting he could have had it; but he, without objection, proceeded to trial by jury, and thereafter abandoned his demand for an accounting. Washburn v. Mendenhall, 21 Minn. 332.

The deed and agreement to reconvey amounted to a mortgage. Cornell v. Hall, 22 Mich. 377; Smith v. Crosby, 47 Wis. 160; Jones on Mtgs., §§ 258–61; Montgomery v. Chadwick, 7 Iowa, 114.

Corliss, C. J. In January, 1882, plaintiff and defendant entered into an oral agreement under which plaintiff, who resided

in the east, and had some capital, was to furnish money to pur-
chase real estate in the west for speculation; the defendant
agreeing to make the purchases, and do all things necessary in
the business, without compensation for his time and expenses—
the two dividing the profits of the venture between them. This
general statement of the compact between the parties is suffi-
cient to present the first question to be considered on this ap-
peal. In the court below, the plaintiff recovered judgment
against defendant for over $9,000, and a part of this recovery is
based on a written agreement between the parties growing out
of the following facts: In the course of their dealings defend-
ant purchased an eighty-acre tract of land near the city of Fargo,
and took the deed thereof in the names of himself and the plain-
tiff. All the money that was paid on this purchase was fur-
nished by the plaintiff, being $7,100; and the balance of the pur-
chase money, $2,500, was secured by their joint note and mort-
gage. Subsequently, and in October, 1882, the defendant exe-
cuted to plaintiff a warranty deed for his half interest, in the
legal title to this property, and as part of the same transaction
the plaintiff signed and delivered to defendant an agreement
which is, in substance, as follows: "Agreement made and en-
tered into this 7th day of October, 1882, by and between Thomas
J. Devore, * * * party of the first part, and Thomas S.
Woodruff, * * * party of the second part. Whereas, the
party of the second part has purchased for himself and party of
the first part [certain lands described,] paying therefore $7,100
of moneys of party of the first part therefor, executing a mort-
gage for balance of purchase money in the sum of $2,500, with
interest from June 7th, 1882, making the total amount of said
purchase $9,600, now this agreement witnesseth that the party
of the second part, for the purpose of securing the party of the
first part for the moneys paid by him upon this purchase, has
this day deeded his interest in said eighty acres of land to
said party of the first part for the nominal sum of one dollar,
the party of the first part agreeing to assume the payment of
the mortgage and note jointly executed by party of the first
part and party of the second part, made payable to C. D. Bough-
ton, of Fargo, for the sum of twenty-five hundred dollars, and

interest from June 7, 1882. And it is further agreed, by the party of the first part that, in consideration of the sum of one dollar to him in hand paid by the party of the second part, the receipt whereof is hereby acknowledged, said party of the second part shall have the right at any time, upon making tender to the party of the first part, his heirs, executors, or administrators, of the sum of forty-eight hundred dollars, together with legal interest thereon, to be computed from and after one year from the date of the purchase of said eighty acres, to-wit: June 7, 1883, to receive from the party of the first part, his heirs, executors, or administrators, a good and sufficient deed of general warranty of the undivided one-half of said eighty acres of land,    * * * * * * * And it is further agreed that party of the first part, his heirs, executors, or administrators, shall not sell or dispose of said eighty acres of land without the consent in writing of party of the second part first obtained thereto. And it is further agreed that, should an opportunity present itself to sell said eighty acres of land at such an advance as shall be agreed upon, that the rights of party of the second part to become the purchaser thereof shall in no way be prejudiced, but his rights shall be and remain the same as an owner of an undivided one-half of said eighty acres, upon payment to party of the first part, his heirs, executors, or administrators, of the said sum of forty-eight hundred dollars, with interest from June 7, 1883, as aforesaid; this contract to be and remain in force for the period of five years. In witness whereof the party of the first part hath hereunto set his hand and seal this 7th day of October, A. D. 1882."

On the trial the court charged, as a matter of law, this transaction established a liability against the defendant for the sum of $4,800 and interest. This is assigned as error. Assuming without deciding, that under the original agreement between the parties the defendant was liable to plaintiff for one-half of the purchase price of the property, it is still clear that the parties could, by settlement, extinguish that liability; and this is what defendant insists was done when the deed and contract were executed. The trial court held that the papers conclu-

sively showed an intention to secure to plaintiff this sum of $4,800 claimed to be owing him from defendant. In this we think the court erred. That the parties could enter into a contract to deed the property to plaintiff absolutely, giving the defendant a mere option to repurchase one-half thereof, cannot be doubted. If this transaction can be said to be clear on its face, this is its proper interpretation. It will be noticed, in the agreement already set forth, the plaintiff agrees to assume the payment of the note and mortgage executed by him and defendant jointly to secure the unpaid purchase price of the property. He certainly did not intend by this agreement to release defendant from liability to the holder of such note and mortgage, as that he could not do without the consent of such holder. It cannot be said that he intended to take upon himself the payment of this whole mortgage debt as between himself and defendant, and yet hold defendant to his liability to pay one-half of the purchase price of the property of which it formed part. If the debt of defendant to plaintiff for one-half of the money advanced by the latter to the former was to stand, plaintiff would not have agreed with defendant that he would assume and pay defendant's one-half of the mortgage debt; for, if it was the intention to continue the old relation between the parties, the plaintiff would have left his relations with defendant untouched as to the mortgage debt, and taken the deed merely as security for what he had actually paid. It is singular that the plaintiff, intending to hold defendant to his liability for his half of the purchase price, $4,800, should, in the transaction which it is claimed evinces such intention, take upon himself the burden of defendant's half of the mortgage debt of $2,500.

We think this assumption strongly indicates a design on the part of both plaintiff and defendant to abandon their old relations with reference to the property, and abrogate existing liability by the substitution of a new arrangement establishing new relations, and that these new relations were those of grantor and grantee, with an option in the grantor to repurchase the property at any time within five years on payment of $4,800 and interest. It is significant that the instrument declares that, in case the parties agree to sell the property for a higher price to

some third person, the rights of the defendant shall be in no way prejudiced. What rights? Those of an owner? Not at all. The express language of the contract is that those rights are defendant's rights "to become a purchaser thereof." These rights "shall in no way be prejudiced." His rights are not, by the terms of the contract, to be those of an owner absolutely, but only an owner "upon payment" of the $4,800 and interest to plaintiff; and, at the end of the instrument, it is declared that this contract shall "be and remain in force for the period of five years." This final clause strongly indicates that it was the intention of the parties that, at the end of that period, not that defendant's debt of $4,800 to plaintiff would be extinguished, and a mortgage turned into a deed by mere lapse of time, but that then should expire defendant's optional right to buy the property at that figure; there resting upon him, however, no obligation to make the payment. It is true that the contract declares that the deed was made for securing plaintiff for the moneys paid by him upon the purchase. But it appears to us that this particular portion of the instrument, when construed with the other provisions thereof, may with as much reason be regarded as expressing an intention to secure plaintiff for moneys he had invested in the property, by giving him the absolute ownership thereof, subject to an optional right in the defendant to repurchase a one-half interest therein, as, on the other hand, evincing a design merely to secure a debt. The instrument does not, in express terms, purport to secure a debt from defendant to plaintiff, nor even to secure moneys advanced by the latter to the former or on his account. It simply declares the object of the deed to be the securing of moneys paid by plaintiff on the purchase; he having paid everything, and obtained the ownership of only a half interest in the property. The following authorities would seem to warrant the court in holding that the deed and instrument on their face show an intention to sell, and give the grantor an optional right to repurchase, although we do not so decide on this appeal: Randall v. Sanders, 87 N. Y. 578; Smith v. Crosby, 47 Wis. 160, 2 N. W. Rep. 104; Buse v. Page, 32 Minn. 111, 19 N. W. Rep. 736, and 20 N. W. Rep. 95; Conway's Ex'rs v. Alexander, 7 Cranch, 218; Flagg v. Mann, 14

Pick. 467; Voss v. Eller, (Ind.) 10 N. E. Rep. 74; Rogers v. Beach, 17 N. E. Rep. 609; Wallace v. Johnstone, 129 U. S. 58, 9 Sup. Ct. Rep. 243; Elston v. Chamberlain, 21 Pac. Rep. 259; Gassert v. Boyk, 19 Pac. Rep. 281. It is sufficient on this appeal to say that the most favorable view to the plaintiff is that the instrument is ambiguous, and the question whether security was intended—the papers, on their face, not clearly showing a purpose to give security—was a question of fact, resting ultimately on the intention of the parties, to be ascertained, not only from the writings, but from all the other evidence in the case. Whether the papers, on their face, show an absolute sale, with an optional right to repurchase, or are ambiguous, parol evidence is equally admissible to show that security for a debt was in fact intended. While strongly of the opinion that the deed and instrument, when construed by themselves, disclose a design to establish the relation of grantor and grantee, with an optional right in the latter to purchase within five years at a certain price, and not an intention to secure a debt, we do not decide that question, but prefer to put our ruling on the other ground, that the instrument does not clearly show that security was intended, and the question was one of fact for the jury; the defendant having testified that the transaction was not for security, but an absolute settlement and extinguishment of their old relations. Wallace v. Johnstone, 129 U. S. 58, 9 Sup. Ct. Rep. 243; Flagg v. Mann, 14 Pick. 467; Ullman v. Jasper, 7 S. W. Rep. 763. We believe that, under the evidence in this case, the question whether security or settlement was intended is to be determined, not for or against either party, as a matter of law, from the deed and instrument alone, but as a question of fact to be decided, according to the intention of the parties, from all the evidence in the case.

The other ground of recovery was the profit realized by defendant on sale by him of certain Bismarck property belonging to the firm; which, after sale to a third party, he repurchased in his own name, and sold again at an advance. Whatever liability on the part of the defendant to plaintiff growing out of this transaction there may be, the matter is so connected with the partnership dealings that no separate debt arose in favor of

the former to the latter. The theory on which defendant would be bound to account to the plaintiff for the profits realized on sale after he had taken the title in his own name is that the property remained partnership property, in the eye of the law, notwithstanding the transfer of the title from the partnership to the defendant through a third person. The reason lying at the foundation of the doctrine that one partner cannot sue a co-partner on account of partnership matters is the impossibility of settling the accounts of the partners in a legal action, and therefore, the impossibility of determining in that action whether the defendant partner is at all indebted to the plaintiff partner on a full settlement of their accounts. The law will not pick out an isolated partnership transaction, and predicate a liability on that alone when it is possible that on a full accounting between the partners the balance is the other way. This principle applies with full force to this case. There have been numerous and complicated partnership transactions between the parties. It does not in any manner appear that the partners have ever had a full settlement of their accounts. Their minds have never met on the basis of a conceded balance. It does not even appear that all matters save this particular Bismarck deal have ever been adjusted. The complaint is fatal to such a theory of the case, and the evidence does not change the situation of the parties in this respect. It is, undoubtedly, thoroughly established, that, where there is only a single transaction, no accounting is necessary, but suit may be brought at law by one of two partners against the other to recover the amount due him arising from the single venture. 2 Bates, Partn. § 865, and cases; Pettengill v. Jones, 28 Kan. 749; Sikes v. Work, 6 Gray, 433; Wheeler v. Arnold, 30 Mich. 304; Kutz v. Driebelbis, 17 Atl. Rep. 609. The decision in Clark v. Mills, (Kan.) 13 Pac. Rep. 569, while an extreme case, will not sustain this action. In that case the dealings between the partners embraced only a few items, and there were no such transactions as to make a settlement difficult. There were no firm debts or credits, and all the affairs of the partnership had been adjusted except an accountting between them. The rule in Thompson v. Lowe, (Ind.) 12 N. E. Rep. 476, certainly is not favorable to plaintiff,

although cited by him.   The opinion enunciates the doctrine fatal to his recovery at law before an accounting has been had: "Courts will not ordinarily entertain matters relating to partnership accounts between partners until, by its judgment or decree, a final adjustment of the partnership business can be effected." The authorities fully sustain our decision that the plaintiff could not recover on the Bismarck deal until all the affairs of the partnership had been adjusted, and a balance reached; and in that case his action would not be to recover the profits of this particular transaction, but the final balance due him on settlement of all the paatnership dealings, of which this particular transaction was only a single item.   2 Bates, Partn. §§ 849–861, and cases cited; Arnold v. Arnold, 90 N. Y. 580; Ross v. Cornell, 45 Cal. 133; Bowzer v. Stoughton (Ill.) 9 N. E. Rep. 208.

We would say, further, as to the 80-acre tract near Fargo, that, if plaintiff's contention with reference to it is true—if it was in fact partnership property—then all dealings between the parties, as partners, with reference to this property, must go into the accounting between them, and the liability of either to the other is the balance which can be shown in favor of either after all partnership matters have been fully adjusted.   The judgment is reversed and a new trial ordered.   All concur.

WALLIN, J., having been of counsel in this case did not sit; TEMPLETON J., of the first district, sitting in his place.